# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

**No. 19-7099**                     **September Term, 2020**

FILED ON: OCTOBER 6, 2020

LARRY ELLIOTT KLAYMAN, AN INDIVIDUAL,
APPELLANT

v.

ESTHER LIM, IN HER INDIVIDUAL CAPACITY, ET AL.,
APPELLEES

---

Appeal from the United States District Court
for the District of Columbia
(No. 1:18-cv-02209)

---

# No. 19-7100

LARRY ELLIOTT KLAYMAN, AN INDIVIDUAL,
APPELLANT

v.

HAMILTON P. FOX, III, IN HIS INDIVIDUAL CAPACITY, ET AL.,
APPELLEES

---

Appeal from the United States District Court
for the District of Columbia
(No. 1:18-cv-01579)

---

Before: HENDERSON, MILLETT and PILLARD, *Circuit Judges*.

# J U D G M E N T

These two appeals were considered on the record from the United States District Court for the District of Columbia and on the briefs of the parties. *See* FED. R. APP. P. 34(a)(2); D.C. CIR. R. 34(j). The court has afforded the issues full consideration and determined they do not warrant a published opinion. *See* D.C. CIR. R. 36(d). For the reasons stated below, it is hereby

**ORDERED AND ADJUDGED** that the judgment of the United States District Court for the District of Columbia in both cases be **AFFIRMED**.

In these two related cases, attorney Larry Klayman challenges three professional disciplinary proceedings that the D.C. Office of Disciplinary Counsel (Disciplinary Counsel or ODC) initiated against him—the Judicial Watch matter, the Sataki matter, and the Bundy matter. In *Klayman v. Fox*, he sued the Disciplinary Counsel and four ODC employees, challenging their prosecution of two disciplinary proceedings against him: one for representing individuals in a suit against the organization he had previously served as General Counsel (the Judicial Watch matter), and the other for letting his personal interests interfere with his representation of a client (the Sataki matter). In *Klayman v. Lim*, he sued the same defendants plus the D.C. Bar and its President, challenging Disciplinary Counsel's prosecution of a third disciplinary charge—in which Klayman is accused of making misleading or incomplete representations to courts within the Ninth Circuit (the Bundy matter)—and the D.C. Bar's failure to stop Disciplinary Counsel's allegedly selective pursuit of the three matters. The district court dismissed all claims in both cases in two separate orders. *See Klayman v. Fox*, 2019 WL 2396538 (D.D.C. June 5, 2019); *Klayman v. Lim*, 2019 WL 2396539 (D.D.C. June 5, 2019).

On appeal, Klayman contests the district court's determinations (1) that the individual ODC officials are absolutely immune from suit for damages; (2) to abstain from adjudicating Klayman's challenges insofar as they address matters in ongoing D.C. disciplinary proceedings; and (3) that Klayman failed to state a claim against the D.C. Bar defendants. We have jurisdiction under 28 U.S.C. § 1291 and our review is *de novo*. *See Jackson v. Office of the Mayor*, 911 F.3d 1167, 1170 (D.C. Cir. 2018). All three challenges fail.

*First*, the district court was correct that the individual Disciplinary Counsel employees are immune from liability for damages on federal- or D.C.-law claims arising from their official actions of initiating and adjudicating disciplinary charges. D.C. officials charged with disciplining individuals engaged in the unauthorized practice of law are "entitled to the protection of absolute immunity." *Simons v. Bellinger*, 643 F.2d 774, 782 (D.C. Cir. 1980); *see also In re Banks*, 805 A.2d 990, 1001 (D.C. 2002) (applying *Simons* to claims arising under D.C. law); D.C. BAR R. XI, § 19(a). Klayman agrees that Disciplinary Counsel officials enjoy absolute immunity for their acts in performance of their "official duties," but contends that absolute immunity cannot protect them against suits arising from pursuit of "meritless" charges in "bad faith." Klayman *Fox* Br. 14-15; *accord* Klayman *Lim* Br. 15. Yet absolute immunity, unlike "qualified or good-faith immunity,"

2

provides Disciplinary Counsel attorneys prosecuting misconduct charges with "complete protection from suit." *See Harlow v. Fitzgerald*, 457 U.S. 800, 807 (1982). Whether or not they had good reason to pursue charges, Disciplinary Counsel's inquiry into Klayman's affairs and decision to seek disciplinary action "was plainly within the general matters . . . committed to [their] discretion" under D.C. law, entitling ODC employees to absolute immunity from the damages claims. *Simons*, 643 F.2d at 786.

*Second*, Klayman fails to show that the district court erred by abstaining under *Younger v. Harris,* 401 U.S. 37 (1971), from deciding his claims for injunctive relief against ongoing proceedings within the District of Columbia's system of attorney discipline. Federal-court abstention from interference with pending state proceedings (including D.C. proceedings) is appropriate "so long as there is no showing of bad faith, harassment, or some other extraordinary circumstance" on the part of the state "that would make abstention inappropriate." *Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 435 (1982); *see also JMM Corp. v. District of Columbia*, 378 F.3d 1117, 1125 (D.C. Cir. 2004) (holding that *Younger* is applicable to D.C. proceedings). Klayman does not dispute there are ongoing disciplinary proceedings that would ordinarily lead to federal-court abstention,[1] *see Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 81 (2013) (discussing *Middlesex*, 457 U.S. at 433-35), but contends that Disciplinary Counsel acted with sufficient "bad faith" to make abstention inappropriate in this case. Klayman *Lim* Br. 11-14; *see also* Klayman *Fox* Br. 10-14.

The facts Klayman alleged—that he and the ODC defendants had diametrically opposed political affiliations, that he had several heated exchanges with some of the defendants, and that the Florida and Pennsylvania bars independently decided not to pursue the Sataki matter—do not amount to "extraordinary circumstances" justifying federal intervention. *Middlesex*, 457 U.S. at 437. Klayman has made no "substantial," nonconclusory allegations that the Disciplinary Counsel defendants have pursued the matters "with[out] any expectation of" sustaining the charges against him. *Younger*, 401 U.S. at 48 (quoting *Dombrowski v. Pfister*, 380 U.S. 479, 482 (1965)). Indeed, the Ninth Circuit's portrayal of the facts underlying the Bundy matter reinforces that Disciplinary Counsel's decision to proceed was reasonable and bore no indicia of bad faith. *See In re Bundy*, 852 F.3d 945, 951 (9th Cir. 2017) (per curiam) ("At best, Klayman has shown such a casual acquaintance with the facts that he is guilty of at least gross negligence in his representations to this court."). We therefore conclude that no exception to *Younger* abstention applies.

---

[1] After the parties fully briefed this appeal, the D.C. Court of Appeals resolved the Judicial Watch disciplinary proceeding. *See In re Klayman*, 228 A.3d 713 (D.C. 2020) (per curiam). Because there is no longer any ongoing disciplinary proceeding from which to abstain, we dismiss as moot Klayman's claim for injunctive relief against the disciplinary proceedings in that matter. *See Wood v. Several Unknown Metro. Police Officers*, 835 F.2d 340, 341-42 (D.C. Cir. 1987) (holding that the plaintiff's challenge to the district court's invocation of the *Younger* doctrine was moot where the D.C. courts had since resolved their proceedings).

*Third*, the district court correctly determined that Klayman failed to state a claim against the D.C. Bar and its President, whom he accuses of "refus[ing] to act" to prevent Disciplinary Counsel's alleged abuse. Klayman *Lim* Br. 16. Klayman points to nothing plausibly suggesting that the D.C. Bar defendants had any duty to act on his complaints against ODC attorneys or otherwise to intercede on his behalf. To the contrary, not only do the D.C. Bar's rules make clear that "all assistants and employees of [ODC] . . . shall be immune from disciplinary complaint," D.C. Bar R. XI, § 19(a), but Disciplinary Counsel attorneys are accountable to the D.C. Board on Professional Responsibility, not the D.C. Bar or its President, *see id*. § 4(e). As the district court held, Klayman also does not plausibly allege that an unlawful motive lay behind the D.C. Bar defendants' decision not to intercede in his behalf. *See Lim*, 2019 WL 2396539, at *5.

In addition to contesting the dismissal of his claims, Klayman also challenges the denial of his post-dismissal motion for recusal of the district judge under 28 U.S.C. §§ 144 and 455. *See Klayman v. Lim*, 2019 WL 3752774 (D.D.C. Aug. 8, 2019); *Klayman v. Fox*, 2019 WL 3752773 (D.D.C. Aug. 8, 2019). Klayman's motion for recusal reprises the same ground pressed in his unsuccessful pre-dismissal recusal requests—alleging that the district judge's preconfirmation partisan and professional activities suggest his political beliefs align with Disciplinary Counsel's and against Klayman's.

Whether evaluated under section 144 or section 455, Klayman's motion for recusal is untimely and meritless. A motion for recusal under section 144 must be filed "not less than ten days before the beginning of the term at which the proceeding is to be heard, [unless] good cause shall be shown," 28 U.S.C. § 144, yet Klayman impermissibly waited without any good cause through almost a year of litigation before invoking section 144, *see SEC v. Loving Spirit Found. Inc.*, 392 F.3d 486, 492-93 (D.C. Cir. 2004). Section 455—unlike section 144—"contains no express timeliness provision," but is similarly understood to require litigants to "raise the disqualification issue within a reasonable time after the grounds for it are known." *United States v. Barrett*, 111 F.3d 947, 951 (D.C. Cir. 1997) (collecting cases). Here, Klayman knew about the district judge's pre-judicial background at the outset of these cases but delayed moving for recusal until after he knew how the judge would rule on the merits—raising the very specter of gamesmanship that the timeliness requirement is designed to prevent. *See Loving Spirit*, 392 F.3d at 492-93; *Barrett*, 111 F.3d at 951-52. Even had the motion been timely filed, on its merits "[t]he fact of past political activity alone will rarely require recusal, and we conclude it does not do so here." *Higganbotham v. Oklahoma ex rel. Okla. Transp. Comm'n*, 328 F.3d 638, 645 (10th Cir. 2003).

For all of the foregoing reasons, we affirm the district court's judgment in both cases.

Pursuant to D.C. Circuit Rule 36, this disposition will not be published.  The Clerk is directed to withhold issuance of the mandate herein until seven days after resolution of any timely petition for rehearing or petition for rehearing *en banc*.  *See* FED. R. APP. P. 41(b); D.C. CIR. R. 41(a)(1).

## Per Curiam

**FOR THE COURT:**
Mark J. Langer, Clerk

BY:     /s/
Daniel J. Reidy
Deputy Clerk